T.C. Memo. 2013-147

UNITED STATES TAX COURT

JAMES F. DALY AND CANDACE H. DALY, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23850-10.                    Filed June 6, 2013.

<u>Eric D. Froisland</u>, for petitioners.

<u>Inga C. Plucinski</u>, for respondent.

MEMORANDUM OPINION

KERRIGAN, <u>Judge</u>:  Respondent determined deficiencies and penalties as
follows:

| [*2] Year | Deficiency | Penalty sec. 6662(a) |
|---|---|---|
| 2006 | $26,253 | $5,251 |
| 2007 | 17,051 | 3,410 |
| 2008 | 20,958 | 4,192 |

After concessions tax year 2006 is not in issue. The only issue remaining for our consideration is whether petitioner husband was a qualified individual for purposes of section 911(a) for tax years 2007 and 2008 (years in issue).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts have been rounded to the nearest dollar.

Background

This case was fully stipulated under Rule 122. The stipulated facts are incorporated in our findings by this reference. Petitioners resided in Utah when they filed the petition.

Petitioner husband is a U.S. citizen. He began working for L3 Communications (L3) in April 1982 as a full-time employee and remained there until June 1989. Between June 1986 and October 1987 petitioner husband

[*3] worked for L3 in Honduras. He was physically present in Honduras during that time and maintained a residence there.

Petitioner husband returned to work for L3 in November 1994 as a full-time employee. He remained with L3 until April 1999. During that time petitioner husband did not work overseas. Petitioner husband returned to L3 in August 2006 as a full-time employee. He was employed by L3 during the years in issue.

During the years in issue L3 maintained its principal place of business in Salt Lake City, Utah. L3 contracted with the Department of Defense. Part of petitioner's work for L3 involved L3's contract with the Department of Defense.

During the years in issue petitioner husband performed services for L3 in Afghanistan and Iraq. L3 compensated petitioner husband for those services. When petitioner husband was working overseas, he was unable to choose where he would be working or for how long he would be there. He was informed of his departure date only one month in advance. He was informed of his return date only two weeks in advance. Petitioner husband, however, was aware in advance that his assignments in Afghanistan and/or Iraq would last approximately three months. The Department of the Air Force provided L3 with an official travel authorization for petitioner husband for travel from August 10, 2007, to August 31, 2008.

**[*4]** Petitioner husband was in Afghanistan or Iraq from August 29 through December 12, 2007, and January 25 to April 28, 2008.[1] While petitioner husband was in Afghanistan, he lived and worked on the Kandahar Air Base. While petitioner husband was in Iraq, he lived and worked on the Ballard Air Base. The U.S. Air Force transported petitioner husband to and from Iraq and Afghanistan. The U.S. military did not permit petitioner husband to leave the military base on which he was working and living. The U.S. military also did not permit petitioner husband's family to live with him on either military base.

While in Iraq and Afghanistan petitioner husband worked 12-hour shifts seven days a week. L3 deposited petitioner husband's wages electronically into his bank account. He had access to these funds while he was in Iraq and Afghanistan.

During the years in issue petitioner husband worked in Utah. L3 also required that he travel to California, Nevada, and Germany. While in Utah, California, and Nevada, petitioner husband worked three days of 12-hour shifts followed by four days off, then four days of 12-hour shifts followed by three days off.

---

[1]According to the opening briefs of both petitioners and respondent, the parties stipulated the incorrect dates and that petitioner husband lived in Afghanistan and/or Iraq sometime between August 29 and December 12, 2007.

**[\*5]** During the years in issue petitioner wife was self-employed as a lobbyist. Her business was in Utah. The parties agree that petitioner wife earned and received all of the self-employment income generated by her business, as calculated by the parties in their stipulation of settled issues, for tax years 2006, 2007, and 2008.

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for tax year 2007. They excluded $24,888 in wages that L3 had paid to petitioner husband. Petitioners attached a Form 2555-EZ, Foreign Earned Income Exclusion, to their tax return. On the Form 2555-EZ petitioners listed Utah as their tax home. Petitioners also attached a letter requesting a waiver of "foreign earned income tax 330 day requirement" (2007 request for waiver) to their tax return. Petitioner husband signed the 2007 request for waiver.

In the 2007 request for waiver petitioner husband requested a "prorated foreign earned income excludable amount of $24,888.00" because he was "deployed under government orders to a combat zone in Iraq" for 106 days in tax year 2007 (from August 29 to December 12). Petitioner husband noted that the foreign earned income exclusion amount for that year was $85,700, or approximately $235 per day. He concluded that "106 days times $234.79 per day deployed in the combat zone equates to a prorated foreign earned income

[*6] excludable amount of $24,888.00." Petitioner husband wrote: "I was not armed, equipped, or trained to operate in a combat environment therefore I was not able to safely stay the required 330 days in Iraq."

Petitioners filed a Form 1040 for tax year 2008 in June 2009. Petitioners excluded $22,259 in wages that L3 had paid to petitioner husband. Petitioners attached a Form 2555-EZ to their tax return and listed Utah as their tax home. Petitioners also attached a letter requesting a waiver of "foreign earned income tax 330 day requirement" (2008 request for waiver) to their tax return. Petitioner husband signed the 2008 request for waiver.

In the 2008 request for waiver petitioner requested a "prorated foreign earned income excludable amount of $22,258.62" because he was "deployed under Government orders, to a combat zones [sic] in Iraq" for 93 days in tax year 2008 (from January 27 to April 26). Petitioner husband noted that the foreign earned income exclusion amount for that year was $87,600, or approximately $239 per day. He concluded that "93 days times $239.34 per day equates to a prorated foreign earned income excludable amount of $22,258.62." Petitioner husband

**[\*7]** wrote: "I was not armed, equipped, or trained to operate in a combat environment therefore I was not able to safely stay the required 330 days in Iraq."

Respondent disallowed the foreign earned income tax exclusions that petitioners claimed for the years in issue.

Discussion

Generally, a taxpayer bears the burden of proving the Commissioner's determinations in a notice of deficiency are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the taxpayer may shift the burden of proof to the Commissioner in certain circumstances. Petitioners have not claimed or shown that they meet the specifications of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

Section 61(a) provides that gross income means all income from whatever source derived. Citizens of the United States are generally taxed on income earned outside of the United States unless a specific exclusion applies. Specking v. Commissioner, 117 T.C. 95, 101-102 (2001), aff'd sub nom. Haessly v. Commissioner, 68 Fed. Appx. 44 (9th Cir. 2003), and aff'd sub nom. Umbach v. Commissioner, 357 F.3d 1108 (10th Cir. 2003). Exclusions from income are construed narrowly; taxpayers must bring themselves within the clear scope of the exclusion. Id. at 101.

**[*8]** Section 911(a) provides in relevant part that a qualified individual may elect to exclude his or her foreign earned income from gross income. The exclusion amount for calendar years 2002 and thereafter is limited to $80,000 per year, indexed for inflation. Sec. 911(b)(2)(D)(i) and (ii). Section 911(b)(1)(A) defines the phrase "foreign earned income" as "the amount received by such individual from sources within a foreign country * * * which constitute earned income attributable to services performed by such individual". Section 911(d)(1) defines the phrase "qualified individual" as follows:

> (1) Qualified individual.--The term "qualified individual" means an individual whose tax home is in a foreign country and who is--
>
> (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or
>
> (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period.

Thus, a taxpayer must both (1) maintain a tax home in a foreign country and (2) either (a) establish a bona fide residency for an entire taxable year or (b) be present in a foreign country during at least 330 full days in a 12-month period.

**[*9]**  An individual who fails to meet the 330-day physical presence test of section 911(d)(1)(B) shall be treated as a qualified individual if he or she is eligible for a waiver of period of stay in a foreign country pursuant to section 911(d)(4).  Section 911(d)(4) provides in pertinent part:

> (4) Waiver of period of stay in foreign country.-- Notwithstanding paragraph (1), an individual who--
>
>> (A) is a bona fide resident of, or is present in, a foreign country for any period,
>>
>> (B) leaves such foreign country after August 31, 1978--
>>
>>> (i) during any period during which the Secretary determines, after consultation with the Secretary of State or his delegate, that individuals were required to leave such foreign country because of war, civil unrest, or similar adverse conditions in such foreign country which precluded the normal conduct of business by such individuals, and
>>>
>>> (ii) before meeting the requirements of such paragraph (1), and
>>
>> (C) establishes to the satisfaction of the Secretary that such individual could reasonably have been expected to have met such requirements but for the conditions referred to in clause (i) of subparagraph (B),
>
> shall be treated as a qualified individual with respect to the period * * * during which he was a bona fide resident of, or was present in, the foreign country * * *

[*10] Section 911(d)(3) defines the term "tax home" as the individual's home for purposes of section 162(a)(2) (relating to travel expenses while away from home). Section 162(a)(2) provides for a deduction for ordinary and necessary expenses paid during the taxable year in carrying on a trade or business, including travel expenses incurred while away from home in the pursuit of a trade or business. See also Commissioner v. Flowers, 326 U.S. 465, 470 (1946). For purposes of section 162(a)(2), an individual's tax home is "the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located." Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); see also Rev. Rul. 75-432, 1975-2 C.B. 60. If an individual is engaged in a trade or business at more than one location during the tax year, the individual's tax home is located at his or her regular place of business or, if the individual has more than one regular place of business, at his or her principal place of business. See sec. 1.911-2(b), Income Tax Regs. If an individual has no regular or principal place of business because of the nature of the business, then the individual's tax home is his or her place of abode in a real and substantial sense. Id.

An individual, however, shall not be treated as having a tax home in a foreign country for any period during which his or her abode is within the United States. Sec. 911(d)(3); see also Harrington v. Commissioner, 93 T.C. 297, 307

**[*11]** (1989). Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States. Sec. 1.911-2(b), Income Tax Regs.

In prior section 911 cases, we have examined and contrasted the taxpayer's domestic ties (i.e., his or her familial, economic, and personal ties to the foreign country in which he or she claims a tax home) in order to determine whether his or her abode was in the United States during a particular period. Harrington v. Commissioner, 93 T.C. at 307-308; see also Struck v. Commissioner, T.C. Memo. 2007-42; Moudy v. Commissioner, T.C. Memo. 1989-216; Benham v. Commissioner, T.C. Memo. 1989-215; Bosarge v. Commissioner, T.C. Memo. 1989-15; Hummer v. Commissioner, T.C. Memo. 1988-528; Lemay v. Commissioner, T.C. Memo. 1987-256, aff'd, 837 F.2d 681 (5th Cir. 1988); Bujol v. Commissioner, T.C. Memo. 1987-230, aff'd without published opinion, 842 F.2d 328 (5th Cir. 1988). Even though a taxpayer may have some limited ties to a foreign country, if the taxpayer's ties to the United States remain strong, we have held that his or her abode remained in the United States, especially when his or her ties to the foreign country were transitory or limited. Harrington v. Commissioner, 93 T.C. at 308.

[*12] The taxpayer husband in <u>Harrington</u> resided in Texas with his family before he went to Angola as part of his work for a company. We found that the taxpayer husband maintained strong ties to the United States while he was in Angola: he maintained a bank account in Texas and a Texas driver's license and had two vehicles registered in Texas. <u>Id.</u> at 309. In contrast, we found that the taxpayer husband's ties to Angola were almost nonexistent: he did not own land or vehicles, he did not travel, he did not bring his family with him (they were prohibited from accompanying him or staying with him), and he did not maintain a bank account in Angola. <u>Id.</u> We determined that the taxpayer husband's ties to Angola were "severely limited and transitory", and we held that the taxpayer husband's abode for purposes of section 911 remained in the United States. <u>Id.</u>

The same types of factors that supported the holding in <u>Harrington</u> apply here. Petitioner husband maintained strong ties to his home in Utah. He lived on U.S. Air Force bases when he was in Iraq and Afghanistan and was not allowed to leave the bases. His family did not go with him, and he did not travel. He did not open a bank account in Iraq or Afghanistan. Like the taxpayer husband in <u>Harrington</u>, petitioner husband had ties to Iraq and Afghanistan that were severely limited and transitory during the years in issue.

[*13] Petitioners contend that even if petitioner wife had been allowed to join petitioner husband in Iraq or Afghanistan, she nevertheless would have been unable to go because of her separate career. Petitioners also contend that petitioner husband maintained a residence in Utah because of petitioner wife's business. Even if these contentions were true, they would not outweigh petitioner husband's limited ties to Iraq and Afghanistan.

We find that petitioner husband's abode was in the United States during the years in issue. Therefore, petitioners' tax home was in the Untied States (and not in a foreign country) for the purposes of section 911(d)(1) during the years in issue.

Petitioners contend that petitioner husband's residence was in Iraq or Afghanistan or both during the years in issue. They claim that his primary place of business was in Afghanistan and/or Iraq because he was "ordered to be present in these countries for an entire 12 months". Petitioners refer to the travel authorization that L3 received from the Department of the Air Force, which authorized petitioner husband to travel from August 2007 to August 2008. Travel authorization alone is not proof that petitioner husband's primary place of business (and therefore tax home) was in a foreign country. Petitioner husband's temporary location in Afghanistan and Iraq does not change the fact that

[*14] petitioners' tax home was in the United States.  Petitioners have failed to show that petitioner husband established a residence in a real or substantial sense in Afghanistan and/or Iraq in the years in issue.

Petitioners contend that even if we found that petitioner husband's primary place of business was not in Iraq or Afghanistan, his tax home was still located in those countries "because that is where he resided for most of these tax years".  There is nothing in the record that shows that petitioner husband resided in Afghanistan and/or Iraq for most of the years in issue.  For tax year 2007 petitioner husband worked in Afghanistan and/or Iraq for no more than 106 days.  For tax year 2008 petitioner husband worked in Iraq and/or Afghanistan for no more than 93 days.  Less than half of his income was derived from services performed in Afghanistan and/or Iraq.

Petitioner husband's employer, L3, had its principal place of business in Salt Lake City, Utah, during the years in issue.  Petitioners maintained a residence in Utah.  The parties stipulated that petitioner husband worked in Utah during the years in issue.  When petitioner husband was in the country, he worked either at his Utah residence or at L3's Salt Lake City office.  Petitioners contend that petitioner husband worked in California, Nevada, and Germany during the years in issue; however, petitioners have provided no evidence regarding how many days

[*15] he worked in those locations.  Moreover, the address on petitioners' tax returns for the years in issue was in Utah, and petitioners wrote on their Forms 2555-EZ that their tax home was in Utah during those years.

We thus find that petitioners' tax home was in the United States during the years in issue.  Because we have determined that petitioners' tax home was in the United States, we do not need to determine whether petitioner husband was a bona fide resident of Afghanistan and/or Iraq or met the 330-day physical presence test pursuant to section 911(d)(1)(A) and (B).  See Stright v. Commissioner, T.C. Memo. 1993-576.  We note, however, that petitioners also failed to meet the specifications in section 911(d)(1)(A) and (B).  Petitioners did not argue that petitioner husband was a bona fide resident in either country, and petitioner husband was not in Afghanistan and/or Iraq for 330 full days during any 12-month period in the years in issue.  Moreover, petitioner husband's time in Germany fails to get him over the 330-day hurdle because petitioners failed to provide any proof regarding how long he was in Germany.

Petitioners likewise failed to meet the requirements for a waiver of period of stay in a foreign country, pursuant to section 911(d)(4).  The test for the waiver of period of stay in a foreign country is conjunctive:  a taxpayer must meet all three requirements set forth in section 911(d)(4)(A)-(C).

**[\*16]** Petitioners failed to meet the requirements under section 911(d)(4)(B) because they failed to show that the Secretary determined that individuals were required to leave Afghanistan and/or Iraq because of war, civil unrest, or similar adverse conditions. The Secretary publishes a list of foreign countries where war, civil unrest, or similar adverse conditions exist for purposes of section 911(d)(4)(B). Sec. 1.911-2(f), Income Tax Regs. No list was published for 2007. The list that was published for 2008 does not include Iraq or Afghanistan. See Rev. Proc. 2009-22, sec. 2.04, 2009-16 I.R.B. 862, 863.

We thus find that petitioner husband was not a qualified individual under section 911(d)(1) during the years in issue. Accordingly, we hold that petitioners failed to meet the criteria to exclude foreign earned income pursuant to section 911(a) for the years in issue.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.