T.C. Summary Opinion 2018-52

UNITED STATES TAX COURT

LARRY L. LEUENBERGER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24634-15S.                          Filed November 8, 2018.

Larry L. Leuenberger, pro se.

John W. Sheffield III, and Huiwen A. Xi, for respondent.

SUMMARY OPINION

WELLS, Judge:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed.

_____

[1] All section references are to the Internal Revenue Code of 1986, as
amended and in effect for the years in issue, unless otherwise indicated.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This is a proceeding for the redetermination of deficiencies in income tax in the amounts of $20,370 and $9,294, and penalties under section 6662 in the amounts of $4,074 and $1,859 for the 2012 and 2013 tax years, respectively. The case was submitted fully stipulated pursuant to a joint motion for leave to submit case under Rule 122, filed September 25, 2017. After concessions[2] the issues we must decide are whether petitioner is entitled to a foreign earned income exclusion for tax years 2012 and 2013 and whether he is subject to accuracy-related penalties. Petitioner resided in Vancouver, Washington, when he filed the petition.

## Background

In 2012 and 2013 petitioner worked full time as an aircraft captain for Berry Aviation, Inc. (Berry Aviation).[3] During that time Berry Aviation supported multiple Department of Defense contracts related to Operation Enduring Freedom

---

[2] Petitioner concedes an increase in income for the taxable year 2012 in the form of taxable qualified dividends of $16 and ordinary dividends of $974. Petitioner also concedes an increase in income for the taxable year 2013 in the form of taxable qualified dividends of $38 and taxable ordinary dividends of $456.

[3] Berry Aviation maintained its principal place of business in San Marcos, Texas.

in Afghanistan and other regions. Petitioner, a U.S. citizen, worked for Berry Aviation as an authorized contractor piloting a Dehaviland DHC-8 aircraft in support of the U.S. Armed Forces. Petitioner's employment offer letter stated that "a typical rotation for *** [petitioner's] assignment will resemble 60 days on and 60 days off."

During 2012 and 2013 petitioner split his time in rotational shifts between the United States and Bagram Air Base in Afghanistan. In 2012 petitioner worked outside the United States for 173 days, and in 2013 for 203 days.[4] When on deployment, petitioner was furnished governmental housing, meals, and transportation, among other services. During petitioner's time in Afghanistan, Bagram Air Base was susceptible to regular hostilities or attacks. Petitioner was not armed or trained to defend himself from such attacks, nor was he trained to cope with the physical and mental strains of extended exposure to hostilities. Although petitioner did not go outside of Bagram Air Base because of the hostile environment, he was nevertheless exposed to hostilities. For example a rocket

---

[4] During 2012 petitioner traveled in and out of the United States to work in Afghanistan during the following three periods: February 16 to March 29 (43 days); May 25 to July 27 (64 days); and September 20 to November 24 (66 days). During 2013 petitioner once again traveled for three periods to his station in Afghanistan: January 19 to March 25 (66 days); May 14 to July 25 (73 days); and September 21 to November 23 (64 days).

landed 15 feet from the barracks where petitioner and seven other crew members slept, and one of petitioner's crew members witnessed extensive small arms tracer rounds fired off the left side of an aircraft while landing at an outstation.

Throughout 2012 and 2013 petitioner maintained a residence in the United States in Vancouver, Washington.[5]  During these years petitioner had family in the United States, owned and registered three vehicles in the State of Washington,[6] had banking accounts at Wells Fargo Bank, and maintained brokerage and retirement accounts at First Trust Co. of Onaga, Jackson National Life Insurance Co., and Pershing, LLC.  In 2013 petitioner also owned and maintained a residential rental property in Lake Stevens, Washington, and a residential complex in Monroe, Washington.

Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for each of the taxable years 2012 and 2013, showing total tax in the amount of $1,298 and $19,473, respectively. He attached Forms 2555, Foreign Earned

---

[5]  Petitioner's Letters of Authorization from the Department of Defense, authorizing his deployment as a contractor accompanying the U.S. Armed Forces, dated May 24, 2011, May 18, 2012, and May 16, 2013, list petitioner's "home address" as being in Milwaukee, Wisconsin.  For purposes of this opinion the relevant fact is that both the Washington and Wisconsin addresses were within the United States.

[6]  Petitioner owned and registered a 2007 Nitro marine trailer, an orange 2005 Harley-Davidson, and a white 2006 Dodge Ram crew pickup.

Income, to the 2012 and 2013 tax returns, excluding wage income of $95,100 and $52,948, respectively.  Upon examination respondent issued petitioner a notice of deficiency dated June 26, 2015, disallowing the entirety of the foreign earned income exclusion petitioner claimed for 2012 and 2013.  On September 23, 2015, petitioner mailed his petition.

### Discussion

We have jurisdiction over the instant deficiency case pursuant to section 6213(a).  Respondent's determination of a deficiency is entitled to a presumption of correctness, and petitioner bears the burden of proving respondent's determination is erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner does not contend, and respondent has not conceded, that the burden of proof has shifted pursuant to section 7491(a).

Section 61(a) provides that gross income means "all income from whatever source derived".  Citizens of the United States are taxed on their worldwide income unless a specific exclusion applies.  Specking v. Commissioner, 117 T.C. 95, 101-102 (2001), and aff'd sub nom. Umback v. Commissioner, 357 F.3d 1108 (10th Cir. 2003), aff'd sub nom. Haessly v. Commissioner, 68 F. App'x 44 (9th Cir. 2003).  Exclusions from income are construed narrowly, and taxpayers must bring themselves within the clear scope of the exclusion.  Arnett v. Commissioner,

126 T.C. 89, 91-92 (2006), aff'd, 473 F.3d 790 (7th Cir. 2007).  Section 911(a)(1) provides, in relevant part, that a "qualified individual" may elect to exclude from gross income his or her "foreign earned income", subject to limitations set forth in subsection (b)(2).

Petitioner contends that he is a qualified individual who is entitled to exclude his foreign earned income for tax years 2012 and 2013 pursuant to section 911(a)(1).  Foreign earned income is defined as earned income attributable to services performed by a taxpayer outside the United States.  Sec. 911(b)(1)(A).  To be a qualified individual a taxpayer must satisfy two requirements:  (1) the taxpayer must be an individual "whose tax home is in a foreign country" and (2) the taxpayer must either be a "bona fide resident" of one or more foreign countries or be physically present in such country during at least 330 full days in a 12-month period.  Sec. 911(d)(1).  An individual who, like petitioner, is not a bona fide resident of another country, must therefore meet both the tax home and the physical presence requirements to be eligible for the foreign earned income exclusion.  Bujol v. Commissioner, T.C. Memo. 1987-230, aff'd, 842 F.2d 328 (5th Cir. 1988); sec. 1.911-2(a), Income Tax Regs.

Petitioner has failed to show that he satisfies the tax home requirement.  Section 911(d)(3) defines the term "tax home" as, in the case of an individual,

"such individual's home for purposes of section 162(a)(2)". Under section 162(a)(2) a person's tax home is generally considered to be the location of his regular or principal place of employment. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). However, section 911(d)(3) goes on to provide that "[a]n individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States." Thus, a person whose "abode" is within the United States cannot establish that his "tax home" is in a foreign country, even if his regular or principal place of employment is in a foreign country. Harrington v. Commissioner, 93 T.C. 297, 303 (1989); sec. 1.911-2(b), Income Tax Regs. Although the term "abode" is not defined by section 911 or the regulations, this Court has held that it generally means the country in which the taxpayer has the strongest economic, familial, and personal ties. Bujol v. Commissioner, T.C. Memo. 1987-230.

Although petitioner performed his work regularly and principally in Afghanistan during 2012 and 2013, the record shows that his abode was within the United States. A taxpayer posted abroad will invariably have some connections with the foreign country in which he works, but his abode remains in the United States if his ties to the United States are stronger. See Harrington v. Commissioner, 93 T.C. at 308; Daly v. Commissioner, T.C. Memo. 2013-147. In

Daly v. Commissioner, at *12, this Court held that the taxpayer's abode was in the United States because his ties to the foreign countries were "severely limited and transitory". Mr. Daly was an authorized contractor for the Department of Defense who worked and lived on air bases in Afghanistan and Iraq, which he did not leave for safety reasons. Id. at *3-*4. He worked rotational shifts and left these countries when off duty or when required to do so for work. Id. Mr. Daly's wife and family resided in the United States, where he also owned and maintained a residence. Id. at *13-*14. On the basis of these facts we determined that Mr. Daly's economic, familial, and personal ties to the United States were sufficiently strong to consider the United States to be his abode at all times. Id.

The facts in the instant case are similar to those in Daly. Like the taxpayer in Daly, petitioner was an authorized contractor working for the Department of Defense in rotational shifts. Petitioner did not leave the air base where he lived and worked because of safety concerns. His family continued to reside in the United States while he worked overseas. In addition to returning to his home in the United States where he lived during the "off" periods of his rotational shifts, petitioner owned and managed multiple investment properties in the United States in 2013, one of which was a "residential apartment complex". Petitioner also owned and registered various vehicles in Washington during 2012 and 2013 and

maintained a number of bank accounts, brokerage accounts, and retirement accounts. In contrast petitioner has not shown any connection with Afghanistan other than the location of his employment.

Because petitioner had substantially more economic, familial, and personal ties to the United States during 2012 and 2013, we find that his abode was in the United States during those years. If an individual's abode is in the United States, a determination of that individual's tax home within the meaning of section 162(a)(2) is immaterial. Bujol v. Commissioner, T.C. Memo. 1987-230. The taxpayer cannot qualify for the section 911 foreign earned income exclusion because he does not satisfy the tax home requirement, and there is no need for further inquiry to determine whether he is a bona fide resident or meets the 330-day physical presence test. See Daly v. Commissioner, at *15; Bujol v. Commissioner, T.C. Memo. 1987-230. Because petitioner failed to prove that his abode was outside the United States, he does not meet the tax home requirement, he does not satisfy the definition of a "qualified individual", and there is no need for further inquiry to determine whether he was a bona fide resident of Afghanistan or met the 330-day physical presence test. See Daly v. Commissioner, at *15; Bujol v. Commissioner, T.C. Memo. 1987-230.

Petitioner contends that he nevertheless is a qualified individual because he is eligible for a waiver of the section 911(d)(1) requirements pursuant to section 911(d)(4). See Harrington v. Commissioner, 93 T.C. at 311-315. The Secretary, after consultation with the Secretary of State or his delegate, determines for which periods and in which foreign countries the waiver may apply. See sec. 911(d)(4)(B)(i). The Secretary's task is to determine which foreign countries, and during which periods, individuals are required to leave because war, civil unrest, or similar adverse conditions preclude the normal conduct of business. Id. The waiver of section 911(d)(4) is then available to any individual who is (A) a bona fide resident of, or present in, such foreign country for any period; (B) leaves such foreign country during any period determined by the Secretary as described above; and (C) establishes to the satisfaction of the Secretary that such individual could reasonably have been expected to have met the requirements of section 911(d)(1) but for the war, civil unrest, or similar adverse conditions. Sec. 911(d)(4).

Petitioner has failed to show that he satisfies the requirements of section 911(d)(4)(B) or (C). Afghanistan does not appear in the list of countries and periods which the Secretary determined qualify for a waiver during 2012 and 2013. Rev. Proc. 2014-25, 2014-15 I.R.B. 927; Rev. Proc. 2013-23, 2013-17 I.R.B. 978, 979. Petitioner contends that any U.S. citizen working in a foreign

country who has to leave such country as a result of war, civil unrest, or similar adverse conditions inhibiting normal business activities, even if only for temporary relief from those conditions, should qualify for the foreign earned income exclusion without having to meet otherwise prescribed minimum time requirements. Such is petitioner's interpretation of the instructions to Form 2555, which petitioner contends mislead taxpayers into believing that if they are working outside the United States and are forced to leave because of war, civil unrest, or similar adverse conditions, this is sufficient for an exclusion of foreign income.

We disagree with petitioner's contentions. The statute expressly conditions the waiver of section 911(d)(4) upon a determination by the Secretary. Additionally, the instructions as petitioner understood them are not misleading. Petitioner writes in his November 27, 2017, filing that the instructions are the following:

> If your tax home was in a foreign country and you were a bona fide resident of, or physically present in, a foreign country and had to leave because of war, civil unrest, or similar adverse conditions, the minimum time requirement specified under the bona fide residence and physical presence test may be waived. You must be able to show that you could have expected to meet the minimum time requirements if you hadn't been required to leave. Each year the IRS will publish in the Internal Revenue Bulletin a list of the only countries that qualify for the waiver.

The instructions, as petitioner quotes them, state that the IRS publishes a list of the only countries that qualify for the waiver. Petitioner contends that it is incomprehensible that the Secretary, in consultation with the Secretary of State, would omit Afghanistan, "the United States of America's longest engagement ever, * * * 16 years and counting", from a list of countries that should be all inclusive of locations with war, civil unrest, or similar adverse conditions. Nevertheless, Afghanistan was omitted from the list; petitioner has provided no evidence that he received a special waiver from the Secretary, and we cannot ignore the express condition required by the statute.

Furthermore, petitioner has not established, to the satisfaction either of the Secretary or of this Court, that he could reasonably have expected to meet the requirements of section 911(d)(1) but for the adverse conditions in Afghanistan. See sec. 911(d)(4)(C); Harrington v. Commissioner, 93 T.C. at 304. In Harrington v. Commissioner, 93 T.C. at 314, we held that the taxpayer failed to show he could reasonably have been expected to satisfy the requirements of section 911(d)(1). Mr. Harrington had accepted employment in Angola that involved a rotational work schedule in a location that provided his meals and housing, and his family was prohibited from joining him during his work. We also presumed that he was aware of the hostile conditions which existed in Angola when he accepted his

employment.  Given those facts, we did not see how he "could possibly have, either prior to his arrival in Angola or after any of his numerous departures, harbored any reasonable expectation that he would satisfy the requirements of paragraph (1)."  Harrington v. Commissioner, 93 T.C. at 314-315.

Petitioner similarly could not have harbored a reasonable expectation that he would remain in Afghanistan long enough to satisfy the requirements of section 911(d)(1).  Petitioner accepted a rotational work schedule which, by design, had him returning to the United States several times a year.  As petitioner himself points out, he was to work in a country in which the United States had already been engaged in hostilities for many years.  As we stated in Harrington:  "We simply do not believe that Congress intended the waiver provision to be available when a taxpayer begins employment in an already unstable foreign country where there was never even the slightest chance he would satisfy the 'qualified individual' requirements."  Harrington v. Commissioner, 93 T.C. at 315 (citing S. Rept. No. 96-1031 (1980), 1980-2 C.B. 730, 732).  Petitioner's periodic departures from Afghanistan, which were made with every intention of returning within a short time as required by his employment contract, were not the type of permanent departure that Congress contemplated when enacting the waiver.  See id. at 316

(discussing S. Rept. No. 96-1031). Accordingly, petitioner is not a "qualified individual" pursuant to the exception of section 911(d)(4).

Finally, respondent determined that petitioner is subject to a penalty for each year for an underpayment attributable to a substantial understatement of income tax. See sec. 6662(a), (b)(2). An understatement of income tax is substantial when the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A). Respondent bears the burden of production with respect to the imposition of the section 6662(b)(2) penalty, see sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001), including the requisite approval for imposition of the penalty, sec. 6751(b)(1).

Petitioner reported income tax for tax year 2012 of $1,298, understating his income tax liability by $20,370; for tax year 2013 the figures were $19,473 and $9,294, respectively. The amounts of both understatements of income tax exceed $5,000, which is less than 10% percent of the tax required to be shown on petitioner's 2012 and 2013 returns. Petitioner did not provide any reason why the penalty should not apply in the event that he was found not to be entitled to the foreign earned income exclusion.

Nevertheless, we find for petitioner because respondent has failed to meet the burden of production. Section 6751(b)(1) provides that, subject to certain exceptions in section 6751(b)(2), no penalty shall be assessed unless the initial determination of the assessment is personally approved in writing by the immediate supervisor of the individual making the determination or such higher level official as the Secretary may designate. Written approval of the initial penalty determination under section 6751(b)(1) must be obtained no later than the date the notice of deficiency is issued or the date the Commissioner files an answer or amended answer asserting the penalty. Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; see also Graev v. Commissioner, 149 T.C. __ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). Compliance with section 6751(b)(1) is part of the Commissioner's burden of production in any deficiency case in which a penalty subject to section 6751(b)(1) is asserted. Chai v. Commissioner, 851 F.3d at 221. Respondent has not provided any evidence that the substantial understatement of income tax penalties were personally approved in writing by the immediate supervisor of the individual making the determinations. Therefore, respondent has failed to meet the burden of production.

In conclusion, petitioner is not entitled to exclude any foreign earned income from taxation for the taxable year 2012 or 2013 because he was not a "qualified individual" for purposes of section 911(a).  He is not subject to the 20% penalty for an underpayment attributable to substantial understatement of income tax for either year, however, because respondent failed to meet the burden of production.

<u>Decision will be entered for respondent as to the deficiencies and for petitioner as to the penalties</u>.