T.C. Summary Opinion 2019-28

UNITED STATES TAX COURT

JAMES M. CAMBRIA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13323-18S.                    Filed September 30, 2019.

James M. Cambria, pro se.

<u>Michael T. Garrett</u> and <u>Gretchen W. Altenburger</u>, for respondent.

SUMMARY OPINION

NEGA, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $3,090 deficiency, a $618 section 6662(a) accuracy-related penalty, and a $494 section 6651(a)(1) late-filing addition to tax with respect to petitioner's Federal income tax for 2014. After concessions, the issues for decision are whether petitioner's income may be excluded from gross income under section 911 and whether he is liable for the accuracy-related penalty and the late-filing addition to tax.[1]

## Background

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner maintained a permanent residence in Colorado in 2014, and he resided in Colorado when he filed this petition.

In 2014 petitioner accepted employment with Academi Training Center, LLC, to provide security services in Camp Dwyer, Afghanistan. The employment was governed by a 12-month service contract that ran from August 5, 2014, through August 11, 2015. Petitioner's intent in accepting this position was to get his foot in the door at the company in the hopes of gaining employment

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

somewhere else internationally. Petitioner's goal was to move to Europe where he has distant family in France and the Netherlands. Petitioner did not intend to live permanently in Afghanistan. He testified that although his family was prohibited under the contract from accompanying him, even if his family had been allowed to join him in Afghanistan, he would never have moved his family there.

While petitioner was in Camp Dwyer his employer provided him meals and living quarters on the military base. There were several shops on the base where petitioner could purchase daily supplies. Petitioner was not permitted to leave the base for safety reasons. He did not leave Camp Dwyer during his contract except for one trip to the United States from December 12, 2014, through January 1, 2015, for the birth of his child.

Petitioner was paid through a bank account he held in the United States. Petitioner's employer withheld Medicare, Federal Insurance Contributions Act tax, and Federal U.S. income tax from petitioner's pay. Petitioner was not required to pay, and did not pay, Afghan taxes. Throughout the tax year at issue, petitioner maintained a Colorado residence, housing his wife and later their child. Petitioner had a Colorado driver's license, registered and maintained a vehicle in Colorado, had bank and credit card accounts in Colorado and New York, and was registered to vote in New York, where he resided before moving to Colorado. Petitioner did

not have an Afghan driver's license, did not own a car in Afghanistan, and did not have an Afghan bank account.

After his contract ended in August 2015, petitioner returned to Colorado and began taking college classes. Petitioner was eventually selected for a position with the Parker Police Department in Colorado, where he works to this day.

Petitioner timely requested an extension to file his 2014 Federal income tax return, which expired on October 15, 2015. On January 22, 2016, petitioner filed his 2014 Form 1040, U.S. Individual Income Tax Return. On Form 2555-EZ, Foreign Earned Income Exclusion, attached to his 2014 tax return, petitioner took the position that his tax home for 2014 was Afghanistan and excluded his wages earned in Afghanistan from his gross income under section 911(a). Petitioner reported that he was out of the country for 217 days in 2014.[2] Petitioner engaged a tax return preparer with Franklin Tax Services in Denver, Colorado.

Petitioner's 2014 tax return was selected for examination. On April 5, 2018, respondent determined that petitioner was not entitled the foreign earned income exclusion and mailed petitioner a notice of deficiency for 2014. On July 6, 2018, petitioner timely petitioned this Court.

---

[2]Petitioner conceded additional income he excluded as foreign earned income from "DFAS" of $2,537 and "US Security Associates" of $449.

## Discussion

### I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact. Respondent bears the burden of production, but petitioner bears the burden of proof, with respect to the accuracy-related penalty under section 6662(a) and the addition to tax under section 6651(a)(1). See sec. 7491(c).

### II. Foreign Earned Income Exclusion

Section 61(a) provides that gross income means "all income from whatever source derived". Citizens of the United States are taxed on their worldwide income unless a specific exclusion applies. Eram v. Commissioner, T.C. Memo. 2014-60, at *10. Exclusions from gross income are construed narrowly, and a taxpayer must clearly establish his entitlement to any such exclusion. Id.

Section 911(a)(1) provides that, "[a]t the election of a qualified individual * * * , there shall be excluded from the gross income of such individual * * * for any taxable year * * * the foreign earned income of such individual," subject to

limitations set forth in subsection (b)(2). To be a "qualified individual" eligible for this exclusion, a taxpayer must satisfy a three-part test. First, he must be a U.S. citizen who is either a "bona fide resident" of a foreign country for an uninterrupted period which includes an entire taxable year or physically present in a foreign country during at least 330 days in a 12-month period. Id. subsec. (d)(1). Second, he must have "earned income" from personal services rendered in a foreign country. Id. para. (2). Third, his "tax home" for the applicable period must be outside the United States. Id. paras. (1), (3). In addition to satisfying these substantive tests, the taxpayer must make an affirmative "election" to exclude foreign earned income, which petitioner has timely done. Id. subsec. (a).

The parties have stipulated that petitioner met the 330-day physical presence test under section 911(d)(1). Likewise, there is no dispute that petitioner earned income from personal services rendered in a foreign country. Therefore, the sole issue is whether petitioner's "tax home" for purposes of section 911 was in Afghanistan. Section 911(d)(3) defines the term "tax home" to mean, in the case of an individual, "such individual's home for purposes of section 162(a)(2)". Under section 162(a)(2) a person's home is generally considered to be the location of his regular or principal place of business. See Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). However, section 911(d)(3) goes on to provide that "[a]n

individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States." Thus, a person whose "abode" is within the United States cannot establish that his "tax home" is in a foreign country. See Jones v. Commissioner, 927 F.2d 849, 856 (5th Cir. 1991), rev'g T.C. Memo. 1989-616; Harrington v. Commissioner, 93 T.C. 297, 307 (1989).

In Bujol v. Commissioner, T.C. Memo. 1987-230, 53 T.C.M. (CCH) 762, 763-764 (1987), aff'd without published opinion, 842 F.2d 328 (5th Cir. 1988), we considered the meaning of the word "abode" as used in section 911(d)(3) and stated:

> "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2).

A taxpayer's "abode" is generally in the country in which he has the strongest economic, familial, and personal ties. Id. at 764; see also Jones v. Commissioner, 927 F.2d at 856. A taxpayer posted abroad will invariably have some connections with the foreign country in which he works, but when his ties to the United States are stronger, we have held that his "abode" remains in the United States. See, e.g.,

Harrington v. Commissioner, 93 T.C. at 309 (holding that oilfield worker lacked "abode" in Angola). We considered facts similar to those here in Daly v. Commissioner, T.C. Memo. 2013-147, at *12, and held that a taxpayer's abode was in the United States because his ties to the foreign countries were "severely limited and transitory". The taxpayer was an authorized contractor for the Department of Defense who worked and lived on air bases in Afghanistan and Iraq and was not permitted to leave the bases. Id. at *3-*4. He worked rotational shifts and left these countries when off duty or when required to do so for work. Id. The taxpayer's family resided in the United States where he also owned and maintained a residence. Id. at *12-*14. On the basis of these facts we determined that the taxpayer's economic, familial, and personal ties to the United States made the United States his abode at all times. Id. at *13.

The facts in the instant case are similar to those in Daly. Like the taxpayer in Daly, petitioner did not leave the base where he lived and worked. His family continued to reside in the United States while he worked overseas; although they were prohibited from accompanying him, petitioner admitted that even if his family had been allowed to join him in Afghanistan, he would never have moved them to Afghanistan. In addition to returning to his home in the United States for the birth of his child, in 2014 petitioner owned and registered a vehicle in

Colorado, had a Colorado driver's license, was registered to vote in New York, and maintained two bank accounts in the United States. In contrast petitioner has not shown any connection with Afghanistan other than the location of his employment. Petitioner did not own land or vehicles in Afghanistan, he did not maintain a bank account there, and he did not want to bring his family with him. Like the taxpayer in Daly, petitioner had ties to Afghanistan that were severely limited and transitory during the year at issue.

Petitioner noted that in 2015 after his return to Colorado he sought jobs outside the United States and his goal was to work internationally. However, petitioner was not seeking jobs in Afghanistan. In fact petitioner testified that after living in Afghanistan for one year, he wanted to progress into working in a more livable, less hostile country.

Petitioner also argued that his strongest economic ties were in Afghanistan because he was employed there, he paid for internet, he received mail, and he purchased products on the base. These contentions fail to establish that petitioner had more than limited ties to Afghanistan. Rather it is clear that petitioner's ties to Afghanistan were transitory and his ties to the United States were predominant.

We find that petitioner's abode was in the United States during 2014 because petitioner had substantially more economic, familial, and personal ties to

the United States. Therefore, petitioner's tax home was in the United States and not in Afghanistan for the purposes of section 911(d)(1) during the year at issue. Petitioner is therefore liable for the deficiency as determined by respondent.

III.    Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of an underpayment of Federal income tax which is attributable to negligence or disregard of rules or regulations or to a substantial understatement of income tax. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as including any careless, reckless, or intentional disregard. See sec. 1.6662-3(b)(1) and (2), Income Tax Regs. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Under section 7491(c) respondent has the burden of production with respect to the accuracy-related penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To satisfy respondent's burden of production under section 7491(c), he must produce evidence showing, inter alia, that his representatives complied with section 6751(b)(1). See Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). The record contains a

timely penalty approval form that shows that respondent's representatives complied with section 6751(b)(1). Respondent has met the burden of production in this case, and it is petitioner's burden to establish that the imposition of the penalty is not appropriate. See Higbee v. Commissioner, 116 T.C. at 447.

Section 6664(c)(1) provides an exception to the section 6662(a) penalty if it is shown that there was reasonable cause for any portion of the underpayment and the taxpayer acted in good faith. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in view of the taxpayer's experience, knowledge, and education. Id.

The evidence establishes negligence in that petitioner has failed to make a reasonable attempt to comply with the provisions of the Code. Moreover, petitioner offered insufficient evidence that he sought advice regarding proper tax treatment for his income. While petitioner hired a tax preparer believed to have experience, petitioner provided no evidence that he relied on the tax preparer for

advice on whether section 911 applied. Merely hiring a professional to prepare an income tax return--without giving him necessary information or relying on his advice--does not absolve a taxpayer from liability for a penalty. See, e.g., Povolny Grp., Inc. v. Commissioner, T.C. Memo. 2018-37, at *27-*28; Bronson v. Commissioner, T.C. Memo. 2012-17, 2012 WL 129803, at *12-*13, aff'd, 591 F. App'x 625 (9th Cir. 2015).

Petitioner also did not make any arguments on brief or at trial regarding the applicability of the reasonable-cause exception. In fact petitioner testified that he did little to no research of the rules and that he should have fully researched the law before filing his tax return. And the record does not show that the reasonable-cause exception applies to this case. Therefore, we will sustain respondent's determination that petitioner is liable for the accuracy-related penalty for the year at issue.

IV.    Section 6651(a)(1) Addition to Tax

Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file his 2014 Federal income tax return timely. The Commissioner bears the burden of production with respect to a taxpayer's liability for additions to tax. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner carries the burden of production, the taxpayer

must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer has an affirmative defense. See Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a return timely unless it is shown that such failure was due to reasonable cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985). A failure to file a Federal income tax return timely is due to reasonable cause if the taxpayer exercised ordinary business care and prudence but nevertheless was unable to file the return within the prescribed time, typically for reasons outside the taxpayer's control. See McMahan v. Commissioner, 114 F.3d 366, 368-369 (2d Cir. 1997), aff'g T.C. Memo. 1995-547; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

With an extension, petitioner's 2014 Federal income tax return was due on October 15, 2015. He filed his return on January 22, 2016, more than three months after the due date. Petitioner failed to introduce any evidence showing that he had reasonable cause for filing his 2014 return late. Respondent has carried his burden of production. Accordingly, we will sustain respondent's imposition of the addition to tax under section 6651(a)(1) for 2014.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.