# United States Tax Court

T.C. Summary Opinion 2022-17

RUBEN H. DOMDOM, JR.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 18270-17S.                                    Filed August 30, 2022.

————

*Suzanne M. Warren*, for petitioner.

*Gretchen W. Altenburger*, for respondent.

## SUMMARY OPINION

CARLUZZO, *Chief Special Trial Judge*: This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated June 28, 2017 (notice), respondent determined deficiencies in petitioner's 2014 and 2015 federal income tax and imposed a section 6662(a) accuracy-related penalty for each year.

The issues for decision for each year are whether (1) wages petitioner earned in Iraq are excludable from his gross income under

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

section 911(a) and (2) petitioner is liable for a section 6662(a) accuracy-related penalty.

*Background*

Some of the facts have been stipulated and are so found. When the Petition was filed, petitioner resided in Nevada. Petitioner is a U.S. citizen. He lived in San Diego, California, for many years before enlisting in the U.S. Navy in 1989.

Following his military service petitioner was offered a position as a port engineer in Iraq with T-Solutions, Inc. (T-Solutions). That employment lasted from May 23, 2014, until August 21, 2015, when he left Iraq to begin working in Alexandria, Egypt.

While petitioner worked in Iraq, his employer provided him living quarters in what petitioner described as a "walled compound" (compound). According to petitioner, the compound was "like a small village." Generally, petitioner left the compound only to travel to his worksite, although from time to time he obtained permission to leave the compound for personal reasons, such as to shop at local markets or to attend local weddings.

Petitioner's wages from T-Solutions, net of amounts withheld for Medicare, Federal Insurance Contributions Act tax, and federal income tax, were regularly deposited into his bank account that he maintained in the United States. Petitioner's wages were not subject to Iraqi income tax for either year in issue.

Petitioner leased a two-bedroom condominium in San Diego during both years in issue. He left most of his personal belongings there while working in Iraq, and he stored other items, including two cars, at a storage facility in or near San Diego. In 2014 petitioner purchased a Nevada single-family house. His former spouse and three of their children lived there during the years in issue.

Petitioner's timely filed 2014 and 2015 federal income tax returns were prepared by a paid federal income tax return preparation service. Las Vegas addresses are shown for petitioner on both returns,[2] and each return shows his filing status as head of household. Petitioner claimed dependency exemption deductions for three of his children for both

---

[2] Las Vegas addresses are also shown for petitioner on the Petition and a Form W–2, Wage and Tax Statement, issued to him by T-Solutions for each year in issue.

years. On Form 2555, Foreign Earned Income, included with each return, petitioner disclosed the wages he earned from T-Solutions while employed in Iraq but took the position that his tax home was in Iraq and excluded those wages from the income otherwise reported on those returns.[3]

In the notice respondent determined that petitioner was not entitled to the foreign earned income exclusion for either year in issue. Respondent further determined that petitioner was liable for an accuracy-related penalty under section 6662(a) on various grounds for each year.

## *Discussion*

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer generally bears the burden of proving them erroneous. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).[4]

## I. *Foreign Earned Income Exclusion*

Gross income means "all income from whatever source derived," including compensation for services. § 61(a)(1). Citizens of the United States are taxed on their worldwide income unless a specific exclusion applies. *Specking v. Commissioner*, 117 T.C. 95, 101–02 (2001), *aff'd sub nom. Haessly v. Commissioner*, 68 F. App'x 44 (9th Cir. 2003), *and aff'd sub nom. Umbach v. Commissioner*, 357 F.3d 1108 (10th Cir. 2003); *Eram v. Commissioner*, T.C. Memo. 2014-60. Exclusions from gross income are construed narrowly and a taxpayer must clearly establish his entitlement to any such exclusion. *Eram*, T.C. Memo. 2014-60.

Section 911(a)(1) provides that a "qualified individual" may, subject to limitations set forth in subsection (b)(2), elect to exclude from gross income his or her "foreign earned income." To be entitled to this exclusion, a taxpayer must satisfy two requirements. First, the taxpayer must be an individual "whose tax home is in a foreign country." § 911(d)(1). Second, the taxpayer must either be a "bona fide resident"

---

[3] Petitioner now concedes that the income exclusion for each year was improperly computed and overstated.

[4] Petitioner does not claim, and the record does not show, that the provisions of section 7491(a) are applicable, and we proceed as though they are not.

of one or more foreign countries or be physically present in a country or countries during at least 330 days in a 12-month period. *Id.*

Section 911(d)(3) defines the term "tax home" to mean, in the case of an individual, "such individual's home for purposes of section 162(a)(2)." Under section 162(a)(2), a person's tax home is generally considered to be the location of his or her regular or principal place of business. *See Mitchell v. Commissioner*, 74 T.C. 578, 581 (1980). However, section 911(d)(3) goes on to provide that "[a]n individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States." That is, an individual whose "abode" is within the United States cannot be treated as though his or her "tax home" is in a foreign country. *See Jones v. Commissioner*, 927 F.2d 849, 856 (5th Cir. 1991), *rev'g* T.C. Memo. 1989-616; *Harrington v. Commissioner*, 93 T.C. 297, 307 (1989).

The parties have stipulated that for each year in issue petitioner met the 330-day physical presence test under section 911(d)(1). They dispute whether petitioner's "tax home" during either year in issue was in a foreign country. Their dispute requires that we focus on the location of petitioner's abode during each year in issue, and that, in turn, requires that we focus on the meaning of the word "abode."

Words used in a statute, in general, are given their ordinary meaning, *Moskal v. United States*, 498 U.S. 103, 108 (1990), but establishing a taxpayer's place of abode for federal income tax purposes is not as straightforward as common usage of the word "abode" might suggest. In *Bujol v. Commissioner*, T.C. Memo. 1987-230, 53 T.C.M. (CCH) 762, *aff'd without published opinion*, 842 F.2d 328 (5th Cir. 1988), we considered the meaning of the word "abode" as used in section 911(d)(3). Referencing *Black's Law Dictionary* (5th ed. 1979), we noted that "abode" had been variously defined as one's home, habitation, residence, domicile, or place of dwelling but went on to point out:

> While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2).

*Bujol*, 53 T.C.M. (CCH) at 763–64.

Its dictionary definition notwithstanding, for purposes of federal income taxation a taxpayer's "abode" is generally in the country in which the taxpayer has the strongest economic, family, and personal ties. *Id.* at 764; *see also Jones v. Commissioner*, 927 F.2d at 856. Whatever its precise meaning as used in section 911, we proceed as though Congress intended that the word "abode" have the same meaning each place it appears in the Internal Revenue Code. *See Commissioner v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993); *Elec. Arts, Inc. & Subs. v. Commissioner*, 118 T.C. 226, 241 (2002).

Petitioner does not expressly claim where his abode was located during either year in issue, but only two countries need be taken into account, Iraq and the United States. Keeping in mind the importance of family and personal connections in determining an individual's place of abode, we would be reluctant to find that Iraq was petitioner's place of abode during either year in issue. He was there only because of an employment opportunity. He had no family ties there, and his personal ties were minimal. *See Daly v. Commissioner*, T.C. Memo. 2013-147. On the other hand, during both years in issue petitioner continued to rent a condominium in California, owned a house in Nevada where his former spouse and children lived, maintained a bank account in the United States, stored his personal belongings in the United States, and used a U.S. address for various tax-related documents. *See Lemay v. Commissioner*, T.C. Memo. 1987-256, *aff'd*, 837 F.2d 681 (5th Cir. 1988). Furthermore, and if only by implication, petitioner's claim to head of household filing status for both years in issue undermines his claim that the United States was not his place of abode for either year.

To qualify as the head of a household the taxpayer must, among other requirements, "maintain[] as his home a household which constitutes for more than one-half of such taxable year the principal place of abode . . . [of] a qualifying child." § 2(b)(1)(A)(i). Section 152(c)(1)(B) provides that a child is a qualifying child of a taxpayer if, among other requirements, he or she "has the same principal place of abode as the taxpayer for more than one-half of such taxable year."

Petitioner's eligibility for head of household status is not properly before us.[5] However, by claiming head of household status and

---

[5] At the conclusion of trial respondent made an oral motion to conform the pleadings to the proofs. Petitioner objected, and under the circumstances, we agree with petitioner that respondent's motion is not well made. Petitioner objected on the basis of the timing of respondent's motion, rather than its merits. Petitioner did not

dependency exemption deductions for his children residing in the United States, petitioner signaled that he considered his abode to be the same as his children's, and there is nothing in the record that suggests that his children's abode during either year in issue was other than the United States.

We are unable to reconcile petitioner's seemingly inconsistent choices in determining the location of his abode during either year in issue. For our purposes, however, we need not decide where petitioner's abode (whatever its meaning) was during either year in issue. Statutory construction principles aside, common sense dictates that petitioner's abode could not at the same time during either year in issue have been within the United States with his children, as his returns suggest, or not "within the United States," as entitlement to the section 911(a) exclusions here in dispute requires. That being so, petitioner's entitlement to a section 911(a) exclusion for either year fails because of the uncertainty of the point.

Because petitioner has not established that his abode was not within the United States for either year in issue, he cannot be treated as though his tax home was in a foreign country for either of those years. *See* § 911(d)(3). Accordingly, petitioner is not entitled to exclude wages he earned in Iraq from his income for either year in issue. *See* § 911(a), (d)(1).

II.     *Section 6662(a) Accuracy-Related Penalty*

Lastly, we consider whether petitioner is liable for section 6662(a) accuracy-related penalties for 2014 and 2015. Section 6662(a) imposes a 20% accuracy-related penalty on the portion of "an underpayment of tax required to be shown on a return" if, among other reasons, the underpayment is due to a substantial understatement of income tax. *See* § 6662(b)(2), (d).

Respondent bears the burden of production with respect to the imposition of a section 6662(a) accuracy-related penalty. *See* § 7491(c). In this case the underpayments of tax, as defined in section 6664(a), are equal to and computed in the same manner as the deficiencies, *see* § 6211, and those amounts are substantial understatements of income

argue, and could not have argued, that he was entitled to the section 911 exclusions as well as head of household filing status. And petitioner does not concede he did not qualify as a head of household because of the location of his abode during either year in issue.

tax because they exceed the greater of $5,000 or 10% of the amounts of tax required to have been shown on petitioner's 2014 and 2015 returns, *see* § 6662(d)(1)(A). The stipulated exhibits also show that respondent's agent obtained the required supervisory approval under section 6751(b). It follows that respondent's burden of production has been met.

The section 6662(a) accuracy-related penalty does not apply to any portion of an underpayment as to which there was reasonable cause and the taxpayer acted in good faith, § 6664(c)(1); Treas. Reg. § 1.6664-4(b)(1), but the burden of proof rests with the taxpayer to show that the penalty does not apply, *see Higbee v. Commissioner*, 116 T.C. 438, 447 (2001).

Even though the amounts excluded were improperly computed and overstated, petitioner disclosed the wages he sought to exclude from income under section 911(a) on Forms 2555 attached to his 2014 and 2015 returns. Those returns were prepared by a paid income tax return preparer who was provided with petitioner's Forms W–2, and the circumstances surrounding petitioner's employment situation in Iraq for both years in issue. We find that petitioner reasonably relied on the advice of his return preparer with respect to the application of section 911(a) and its technical provisions. *See* § 6664(c); *United States v. Boyle*, 469 U.S. 241, 251 (1985); *Higbee*, 116 T.C. at 448; *Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002); Treas. Reg. § 1.6664-4(b)(1). We further find that petitioner had reasonable cause and acted in good faith with respect to the underpayment of tax required to be shown on his 2014 and 2015 returns. *See* § 6664(c)(1). He is not liable for the section 6662(a) accuracy-related penalty for either year in issue.

To reflect the foregoing,

*An appropriate order and decision will be entered.*